UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shondrell Stephenson, *Plaintiff*, v. City of Chicago, *et al.*, *Defendants*. | No. 21 CV 338 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

After his arrest for unlawful gun possession and acquittal by a jury, Shondrell Stephenson sued the City of Chicago and two police officers who arrested him. During discovery, Defendants repeatedly attempted to learn who Stephenson intended to call as witnesses, so they could depose those individuals. Stephenson at first refused but relented after Defendants moved to compel, disclosing several additional witnesses. Julie Harris was not among them, but Stephenson produced an affidavit from her in opposition to Defendants' motion for summary judgment. [Dkt. 176-6.] Defendants move to strike the affidavit because Stephenson did not disclose Julie Harris as a witness. [Dkt. 184.] For the reasons stated below, the motion is granted.

**I.  Legal Standard**

Federal Rule of Civil Procedure 26(a)(1) provides that "a party must, without awaiting a discovery request," disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Rule 26(e)(1) requires supplementing initial disclosures "if [a]

1

party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Rule 37(c)(1) contains the penalty for failing to make or supplement Rule 26(a)(1) disclosures: "the party is not allowed to use that information or witness to supply evidence on a motion …, unless the failure was substantially justified or is harmless."

"District judges have broad discretion over discovery matters," *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016) (citation omitted), including whether to strike a summary judgment affidavit, *Donaldson v. Johnson & Johnson*, 37 F.4th 400, 405 (7th Cir. 2022). The Seventh Circuit has articulated four factors that guide this Court's discretion in ruling on a Rule 37 motion. Those factors are: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 406, 417 (7th Cir. 2019) (citations omitted).

## II. Background

The gist of Stephenson's lawsuit is that two Chicago police officers, Wilfredo Ortiz and Adam Altenbach, arrested and "commenced criminal proceedings against" him, "for possession of a firearm, without probable cause or legal justification." [Dkt. 177 at 1.][1] Defendants say that there was probable cause for Stephenson's arrest and prosecution because they saw him with a gun, followed him into the house at 10019

---

[1] Citations to page numbers briefs refer to the printed pagination; citations to exhibits refer to the electronic pagination generated by ECF.

South State Street, and found a gun "under a couch next to where Stephenson was standing" when they detained him. [Dkt. 166 at 1–3.] On Stephenson's telling, he was in the kitchen making a Polish sausage when the officers entered the home. [Dkt. 177 at 2.] Where Stephenson was and what he was doing when Ortiz and Altenbach arrived are therefore critical questions in this case.

Stephenson's operative complaint alleges that he was arrested at a "friends and family" cookout. [Dkt. 115 ¶¶ 6–7.][2] Stephenson's initial disclosures, Fed. R. Civ. P. 26(a)(1), served on June 18, 2022, listed three witnesses by name—Stephenson, Ortiz, and Altenbach—plus the catchall categories of anyone "identified by the defendants" and anyone "listed or mentioned in any reports" or "in any records." [Dkt. 184-1 at 2.] Stephenson added that his investigation was continuing. [*Id.*]

Defendants sought to learn the identities of individuals with discoverable information. They propounded two interrogatories relevant here. Interrogatory No. 8 asked Stephenson to identify and provide contact information for "each and every person who, to your knowledge, either witnessed, claims to have witnessed, or who has any knowledge of the incident(s) alleged in your operative complaint, or any injuries and/or damages resulting therefrom." [Dkt. 184-2 at 4.] Interrogatory No. 9 asked Stephenson to identify and provide contact information for "all persons who you expect to testify at trial, identifying with particularity the subjects on which each

---

[2] The currently operative complaint is the Second Amended Complaint [Dkt. 115], but for the majority of discovery, the First Amended Complaint [Dkt. 17] was operative. Because the allegations in the Second Amended Complaint are substantively identical to those in the First with respect to the events of July 4, 2017 and their aftermath [*compare* Dkt. 17 ¶¶ 6–31, *with* Dkt. 115 ¶¶ 6–33], the Court references the Second Amended Complaint throughout.

3

person will testify." [*Id.* at 5.] On August 26, 2022 Stephenson gave identical answers to both interrogatories:

> ANSWER: Plaintiff objects that this request is overly broad in terms of time and scope, and not proportionate to the needs of the case and better suited for oral discovery. Subject thereto, and without waiving said objection, See Dkt. 1, and included but not limited to any defendant, personnel and persons mentioned or identified in PfStephenson0001-000749. Plaintiff investigation continues.

[Dkt. 184-3 at 3–4.]

Unsatisfied, Defendants followed up. On November 11, 2022, counsel wrote in an email:

> I'm trying to find out which witnesses plaintiff plans to call at trial (so I can take their deposition(s)), but plaintiff's answers to our written discovery do not provide a clear answer. For example, Interrogatory No. 9 refers us to plaintiff's complaint and PfStephenson0001-000749. Can you help me by identifying the witnesses by name?

[Dkt. 184-4 at 2.] It is unclear what happened next. [*See* Dkt. 184 at 2 (stating that Stephenson "agreed to produce his friends and family members for depositions" but not including correspondence or other evidence); Dkt. 188 at 2 (disputing that he agreed to produce friends and family but citing no correspondence or other evidence).] As of February 10, 2023, Defendants remained unsatisfied; via email, counsel asked to schedule a Local Rule 37.2 conference "to discuss plaintiff's answers to written discovery. Many of them are incomplete and/or say 'investigation continues.' I would also like to discuss non-party depositions and get firm dates for the family members who were present at the barbecue." [Dkt. 184-5 at 2.] In emails later that month, Defendants continued to request supplemental responses to their interrogatories. [*See, e.g.*, Dkt. 184-6 at 8 ("[P]laintiff answered only parts of [our interrogatories] ….

4

The subparagraphs were omitted in plaintiff's answers. I also note that plaintiff gave the same answer to … many of the interrogatories. … Although the rules allow parties to refer to specific documents, our reading of the rule does not permit you to refer your entire production of documents. We would like plaintiff to amend his answers so they comply with Rule[ ] 33 ….").]

In late March 2023, Defendants raised the same issue again [Dkt. 184-7 at 2–3], and Stephenson agreed to supplement his interrogatory responses. [*Id.* at 2.] On April 18, 2023, Defendants took the deposition of LaRhonda Harris, Stephenson's girlfriend, during which Defendants' counsel asked about individuals who were at the cookout on July 4, 2017, including Julie Harris.[3] [Dkt. 184 at 3.] LaRhonda testified that Julie was inside the house at the time of Stephenson's arrest; LaRhonda did not provide contact information for Julie, but she stated that she "see[s] [Julie] on FaceBook all the time." [*See* Dkt. 176-9 ("LaRhonda Dep.") at 46:18–49:22.] During Stephenson's deposition on January 31, 2023, he too had mentioned Julie, saying she was inside the house holding a baby when the officers entered and arrested him. [Dkt. 163-4 ("Stephenson Dep.") at 111:17–113:19; *see also id.* at 115, 121–22, 126.]

On April 24, 2023, Defendants' counsel emailed again regarding discovery issues including interrogatory answers and stated that if they did not receive a response by April 26, 2023, Defendants would file a motion to compel. [Dkt. 184-9 at 3.] Plaintiff's counsel responded, "As for discovery responses, I will do my best to get them to you by Wednesday [April 26], no later than Friday. … Not sure where a

---

[3] Several individuals have the last name "Harris." After introducing them by full name, the Court thereafter refers to them by first name.

motion to compel is coming from considering we discussed this matter at length and came to a meeting of the minds." [*Id.* at 2.] Defendants responded the next day:

> In my emails from February 28 and March 29, I asked that plaintiff give complete answers to the interrogatories so that each sub-paragraph has a response. … Although the rule allows parties to refer to specific documents, our reading of it does not permit you to refer your entire production of documents.
>
> Finally, plaintiff's Rule 26(a) initial disclosures are incomplete in that they do not identify the name, address, and telephone number (along with the subjects of discoverable information) that you may use to support your claims at trial.

[*Id.*]

Defendants filed a motion to compel on April 28, 2023. [Dkt. 85.] It stated, in pertinent part:

> [P]laintiff's answers to defendants' interrogatories are incomplete and do not comply with Rule 33. … [H]e did provide any information in response to the sub-paragraphs …. His remaining answers make vague and evasive references to the allegations in his original complaint and to his entire production of documents, which makes it nearly impossible for defendants to find the responsive information. Such answers are deficient.

[*Id.* at 4–5.] Defendants asked Magistrate Judge Gilbert to enter an order "compelling him to supplement his answers to defendants' interrogatories … in a manner that complies with Rule[ ] 33." [*Id.* at 5.]

On May 15, 2023, Stephenson supplemented his interrogatory answers. [Dkt. 184-11.] Stephenson continued to object, refer to the original complaint, state that individuals with discoverable information and potential witnesses included "any defendant, personnel and persons mentioned or identified in [discovery productions]," and state that "investigation continues." [*Id.* at 5–6.] But Stephenson did identify two

6

individuals who witnesses the events at issue (LaRhonda and her mother, Christine Harris-Soyebo) and several witnesses he intended to call (himself, LaRhonda, Christine, Ortiz, Dean Ewing, David Jackson, and personnel from Cook County Department of Corrections and Cook County Health Services). [*Id.*] Stephenson did not mention Julie by name, but he stated that he might call additional witnesses. [*Id.*] In response to the motion to compel, Stephenson asserted that the motion was moot since he had "updated the written discovery responses, pursuant to the Defendants' requests" and Defendants had communicated no further objections or requests in the week since his production. [Dkt. 98.] Defendants agreed, and Judge Gilbert denied the motion as moot. [Dkt. 101, 104.]

Defendants moved for summary judgment on March 4, 2024. [Dkt. 162.] One exhibit Stephenson relied on to dispute facts asserted in the motion was an affidavit from Julie, which asserted that she was present and inside the house at 10019 South State Street on July 4, 2017 and witnessed relevant events. [Dkt. 176-6.] Defendants moved to strike the affidavit based on Stephenson's failure to timely identify Julie as someone who had witnessed the events at issue or as a potential witness. [Dkt. 184.]

III. Analysis

Defendants argue that Julie's affidavit should be stricken because the failure to disclose her as someone with discoverable information or as a potential witness violates Rule 26(a)(1) or (e)(1). [Dkt. 184 at 5–6.] Stephenson does not argue that he expressly listed Julie's name in a Rule 26(a)(1) or (e)(1) disclosure. Instead, he argues that he was not required to do so because her name came up in depositions and Defendants were aware that she may have witnessed the events in 10019 South State

7

Street house. [Dkt. 188 at 1–2.] Strictly speaking, the text of Rule 26(e)(1) supports Stephenson's position. It states that a party must make a supplemental disclosure "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." By inference, therefore, a party need not disclose the name of a witness he intends to call if that witness's name has arisen during discovery. [Dkt. 188 at 3–5 (making this argument and collecting district court decisions reaching this outcome).] Despite its textual support in Rule 26(e)(1), the Court cannot agree with Stephenson's argument under the circumstances.

### A. Authority to Require Disclosure

The Court begins with whether it can find that a witness whose name appears in discovery materials must be disclosed under Rule 26(e)(1). The Seventh Circuit answered this question in the affirmative in *Morris v. BNSF Railway Co.*, 969 F.3d 753, 764–66 (7th Cir. 2020). Weeks before trial, the defendant added three previously undisclosed employees to its witness list. The plaintiff moved under Rule 37(c)(1) to bar these witnesses from testifying at trial because the disclosure was untimely. The district court granted the motion. It rejected the argument "that the newly-disclosed witnesses were actually not new (because they had been identified in emails and other documents)," reasoning that "it's one thing to know that a person's name is out there but it's another thing to know that the other side is intending to call him as a witness. That's why we have Rule 26(a) disclosures." *Id.* at 765 (cleaned up).

The Seventh Circuit affirmed. It first addressed a legal question, whether "the district court erred in not assessing whether its supplemental disclosures fit within

8

the exception delineated in Rule 26(e)(1)(A) for information that has 'otherwise been made known to the other parties during the discovery process or in writing.'" *Id.* at 766 (also noting that the defendant "dispute[d] that the duty to supplement imposed by Rule 26(e) required [it] to say that it intended to call those employees as trial witnesses"). The Seventh Circuit held that there was no legal error:

> While it is true that the district court did not expressly reason in terms of Rule 26(e), the court's analysis aligned closely with the precise consideration underlying the Rule's exception for otherwise known information. The court reasoned in practical terms and found, plain and simple, that [the defendant] waited too long to supplement its discovery—a finding that resulted in the district court then precluding the witnesses in question from testifying at all. The combined application of Rule 26(a)(3), Rule 26(e), and Rule 37 allowed the district court to reason along these lines ….

*Id. Morris* concerned the pretrial disclosure of witness lists, which does not implicate the exact same provisions as a party's Rule 26(a)(1) disclosures and whether a witness should be excluded for purposes of summary judgment. *Cf.* Fed. R. Civ. P. 26(a)(3). Even so, the Seventh Circuit's analysis shows that district courts need not robotically apply the text of Rule 26(e)(1)'s exception when doing so would conflict with the goals of the discovery rules. *Cf. Morris*, 969 F.3d at 765 ("[T]he whole point of introducing the discovery mechanisms listed in Rule 26 was to ensure that trials would no longer be 'carried on in the dark.'" (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

Next, the Seventh Circuit explained that the district court did not abuse its discretion when it excluded these witnesses. It noted that the district court was in the best position to "assess[ ] … the significance of the late disclosures." *Id.* at 766. The Seventh Circuit also blessed the result of the district court's decision, which gave "plain and concrete effect to the unmistakable duty to timely supplement mandated

9

by Rule 26(e)." *Id.* It emphasized that "[c]omplying" with Rule 26(e) "should be a priority—not something brushed off as tedious or unimportant so long as the information disclosed late can somehow be unearthed like a needle in a haystack within a prior discovery production." *Id.* And it closed by warning litigants about who assumes the risk of noncompliance: "Parties who do not attend diligently to their obligation to supplement initial disclosures proceed at their own peril. Banking on principles of harmless error to excuse negligence is risky business." *Id.*

*Morris* therefore establishes that the text of Rule 26(e)(1) does not require this Court to bury its head in the sand when evaluating whether a witness who was mentioned during discovery nevertheless needed to be disclosed as a witness. If the Court does bar the testimony or strike affidavit of such a witness, it must do so within the bounds the Seventh Circuit has placed on its discretion. *See Uncommon*, 926 F.3d at 417. But the textual argument Stephenson makes does not compel this Court to deny Defendants' motion. [*Contra* Dkt. 188 at 3–5.]⁴

### B. Whether Rule 26 Required Disclosure

The Court has no trouble concluding that Rule 26 required Stephenson to disclose Julie by name as a witness. At the outset, Stephenson's initial disclosures were incomplete. He listed only himself and the two Defendants as individuals likely

---

⁴ All but one of the district court opinions Stephenson cites predate *Morris*, and the lone post-*Morris* decision undermines the force of his argument. [*See* Dkt. 188 at 3–5.] *Cummings v. Dart*, 2022 WL 461987, at *2 (N.D. Ill. Feb. 15, 2022) ("A party, upon learning information that is responsive to a discovery obligation, must timely submit a disclosure in furthering the ultimate goal of ensuring a trial on the merits of the case. Significantly, the duty to supplement does not cease to exist because information is learned at the end of discovery. However, a party cannot also hold back information and supplement at the end of discovery such that it would cause prejudice to the opposing party." (citing *Morris*, 969 F.3d at 766)).

10

with discoverable information [Dkt. 184-1 at 2]; *see* Fed. R. Civ. P. 26(a)(1), but he should have known that others had such information too. At the very least, Christine and Julie, who were in the house at the time of the arrest, should have been named.[5] However, the Court is mindful that the initial disclosures were served in June 2022, nearly five years after the events at issue. Memories fade. If the occupants of the house during Stephenson's arrest were not top of mind, no matter. Initial disclosures are often incomplete, which is why Rule 26(e)(1) exists. *Morris*, 969 F.3d at 765. The problem is that Stephenson never supplemented his disclosures to state that Julie (among others) likely had discoverable information. *See* Fed. R. Civ. P. 26(e)(1).

Stephenson's lack of disclosure is especially troubling because Defendants took pains to learn whom Stephenson planned to call as witnesses. Defendants repeatedly asked Stephenson to provide this information in Rule 26 disclosures and answers to interrogatories. [*See* Dkt. 184-2, 184-4, 184-5, 184-6, 184-7, 184-9.] Stephenson stood by his boilerplate objections and his incomplete initial disclosures and interrogatory answers. [*See* Dkt. 184-3, 184-7, 184-9.] This approach to discovery is incompatible with Rules 26 and 33. *See Morris*, 696 F.3d at 766 (recognizing "the unmistakable duty to timely supplement mandated by Rule 26(e)," with which "[c]omplying should

---

[5] Stephenson protests that he also included "any person identified by the Defendants, any person listed or mentioned in any reports, or any person listed or mentioned in any records." [Dkt. 188 at 2.] But in this context, as elsewhere, boilerplate language makes things worse, not better. *Cf. Ezell v. City of Chicago*, 2021 WL 2136395, at *1 n.1, *2 (N.D. Ill. May 26, 2021) (lamenting that "[d]espite courts' repeated admonitions that 'boilerplate' objections are ineffectual, their use continues unabated, with the consequent institutional burdens," and collecting numerous authorities (cleaned up)); *Ablan v. Bank of Am. Corp.*, 2014 WL 13114347, at *2 (N.D. Ill. Aug. 8, 2014) (finding that boilerplate language in a Rule 26(a)(1) disclosure was insufficient to put the opposing party about a new category of damages), *report and recommendation adopted*, 2014 WL 6704293 (N.D. Ill. Nov. 24, 2014).

11

be a priority"); *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 679 (7th Cir. 2003) ("We have repeatedly emphasized the importance of providing full and complete interrogatory answers." (citation omitted)); *see also supra* note 5.

It gets worse. When Defendants finally filed a motion to compel, Stephenson should have fully complied with Defendants' requests (that is, disclose all witnesses he might call to support his case), stood his ground and argued that his productions were proper, or done a combination of the two. In practice, Stephenson provided some but not all the names of individuals he planned to call as witnesses (omitting Julie) and represented that the motion to compel was moot. [*See* Dkt. 184-11 at 5–6; Dkt. 98.] Defendants did not realize that they had not received the full witness list—how could they, as only Stephenson could tell them which witness he intended to call to support his own case—so Defendants agreed that their motion to compel was moot. [Dkt. 101.] As a result, Judge Gilbert never ruled on a dispute that rages to this day: whether Stephenson met his discovery obligations. [Dkt. 104.]

Stephenson's conduct is unacceptable on two levels. First, the late disclosure of a partial witness list derailed the discovery process in this case. The parties could not resolve their dispute amongst themselves, so Defendants properly raised it with Judge Gilbert. *See* Fed. R. Civ. P. 37(a)(1). Adjudicating the motion to compel would have avoided the present motion to strike, which is in a sense a rerun of that motion. [*Compare* Dkt. 85 at 4–5 (arguing that Stephenson's interrogatory responses "make vague and evasive references to the allegations in his original complaint and to his entire production of documents, which makes it nearly impossible for defendants to

12

find the responsive information"), *with* Dkt. 188 at 2 (arguing that Stephenson's Rule 26(a)(1) disclosures were proper because he identified "any person identified by the Defendants, any person listed or mentioned in any reports, or any person listed or mentioned in any records").] Moreover, if Stephenson had prevailed on the motion to compel, Defendants would have been able to decide whether to take more depositions, knowing that they were not entitled to Stephenson's full witness list during discovery. Stephenson's partial supplement to his interrogatory answers and his representation that all was well convinced Defendants and Judge Gilbert that the dispute had been resolved. *Cf.* Fed. R. Civ. P. 37(a)(4) (for purposes of a motion to compel, an incomplete or evasive disclosure or response is equivalent to no disclosure or response).

Second, if other litigants replicate Stephenson's actions, it will have profoundly negative effects on federal civil discovery. At its best, discovery can be burdensome and costly; at its worst, it can be a nightmare. *See, e.g.*, *Promier Prods., Inc. v. Orion Cap. LLC*, 2023 WL 8868781, at *1 (N.D. Ill. Dec. 22, 2023) ("The parties' inability to reach out-of-court resolutions on discovery issues, exacerbated by an apparent lack of transparency between themselves and with the Court, has led to several extensions of the fact discovery deadline, as well as motions to compel and motions for sanctions. Compounding the discovery dysfunction, the loser of the motion will often file a motion for reconsideration or a motion objecting to the Magistrate's disposition."); *Feit Elec. Co., Inc. v. CFL Techs. LLC*, 2023 WL 3436346, at *2 (N.D. Ill. May 12, 2023) (noting that objections and responses to early discovery requests "kicked off a protracted discovery dispute that remains unresolved nearly five years later"). Unless

there are consequences for misrepresentations and nondisclosure, how can a party justify trusting an opponent's representation that everything has been turned over? If this Court did not hold that Rule 26 required disclosure of Julie's name under these circumstances, it would be tantamount to saying that Defendants were required to press on with their motion to compel despite being assured that everything had been produced. The Court cannot in good conscience give litigants that incentive.

Rule 26 required Stephenson to disclose Julie by name if he planned to rely on her to support his case, and the discussion of Julie during discovery was no substitute for a timely Rule 26 disclosure. *See Morris*, 969 F.3d at 765 ("[I]t's one thing to know that a person's name is out there but it's another thing to know that the other side is intending to call him as a witness." (cleaned up) (quoting the district court)). [*Contra* Dkt. 188 at 3.] When Defendants repeatedly tried to learn the names of Stephenson's witnesses, he gave incomplete and evasive answers, and his partial disclosure in response to the motion to compel lulled Defendants into a false sense of security. This conclusion also avoids rewarding improper discovery conduct in this case and risking giving other litigants an incentive to behave similarly.

### C. Whether to Strike Julie's Affidavit

Having concluded that Rule 26 required the disclosure of Julie's affidavit, the Court next determines whether to strike the affidavit under Rule 37(c)(1). Doing so is required unless the failure to disclose her as a witness was substantially justified or is harmless. *See* Fed. R. Civ. P. 37(c)(1). In making this determination, the Court looks to the four factors the Seventh Circuit has articulated. *See Uncommon*, 926 F.3d at 417. Every factor supports striking the affidavit, at least to some extent.

14

### 1. Prejudice or Surprise

Prejudice and surprise are both present here. Regarding surprise, Defendants attempted to learn which witnesses Stephenson planned to call at trial. Stephenson disclosed some witnesses by name but not Julie, so Defendants did not expect an affidavit from her at summary judgment. *See, e.g.*, *Steffek v. Client Servs., Inc.*, 948 F.3d 761, 768–769 (7th Cir. 2020). Regarding prejudice, having Julie's testimony come in through an affidavit rather than a deposition would prejudice Defendants, because they could cross-examine Julie at a deposition but cannot cross-examine her affidavit. *See United States ex rel. Gill v. CVS Health Corp.*, 2023 WL 2771166, at *7 n.6 (N.D. Ill. Apr. 4, 2023) ("Affidavits are nearly always self-serving; that's a reason why 'live' testimony is better." (citing *Murillo v. Frank*, 402 F.3d 786, 790 (7th Cir. 2005)).

### 2. Ability to Cure Prejudice

There is no better way to cure the prejudice of having Julie's testimony come in by affidavit than by striking the affidavit. To fairly do otherwise, the Court would at a minimum need to reopen discovery to allow Defendants to depose Julie, which in turn might require supplementing summary judgment briefing and Local Rule 56.1 statements. *Cf. Robertson Transformer Co. v. Gen. Elec. Co.*, 2015 WL 14074998, *2 (N.D. Ill. Sept. 18, 2015) (denying motion to strike a declaration because the court had denied summary judgment and discovery could be taken before trial). The Court could shift Defendants' costs to Stephenson [*see* Dkt. 184 at 8 n.3], but if Stephenson cannot afford to shoulder all the costs (or the Court does not order him to), Defendants would remain worse off than if the Court strikes the affidavit. In any event, reopening

15

discovery would delay the proceedings. Thus, it might be possible to cure the prejudice without striking the affidavit, but granting the motion to strike is the best option.

### 3. Disruption

As just described, curing the prejudice without striking the affidavit would disrupt the proceedings. In *Uncommon*, the Seventh Circuit observed that seeking to extend discovery or depose a witness could cause a "minor" disruption to proceedings. 926 F.3d at 418. Here, however, the disruption would not be minor because discovery has closed and the motion for summary judgment is fully briefed. This factor therefore supports striking the affidavit.

### 4. Bad Faith or Willfulness

The Court finds that Stephenson's failure to disclose Julie as a witness by name was willful or in bad faith. A party acts willfully or in bad faith in this context if he intentionally or recklessly fails to disclose a witness under Rule 26. *See id.*; *Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 191 (7th Cir. 2011). While the Court does not make a finding that Stephenson intentionally attempted to conceal Julie as a witness, it does find that failing to disclose her name under the circumstances described above was at least reckless. Defendants repeatedly asked Stephenson to provide a witness list, objected to his general references to discovery materials, and eventually moved to compel the production of a witness list. Despite these actions by Defendants, Stephenson failed to disclose Julie's name and gave no indication that he would rely on her testimony at summary judgment or trial. The Court finds that Stephenson was at least reckless as to the possibility that Defendants believed that he had disclosed every witness he would use to support his case, yet he allowed them

16

to labor under that false impression. The presence of bad faith or willfulness supports striking the affidavit.

*   *   *

Because all four factors point to excluding Julie's affidavit, the Court finds that Stephenson's failure to disclose her as a witness in violation of Rule 26 was not substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). The Court therefore strikes Julie's affidavit. [Dkt. 176-6.]

## IV. Conclusion

For the reasons stated above, the motion to strike Julie's affidavit [Dkt. 184] is granted. In the opinion released today ruling on Defendants' motion for summary judgment [Dkt. 162], the Court does not consider Julie's affidavit.

Enter: 21-cv-338
Date: July 1, 2024

_____
Lindsay C. Jenkins
United States District Judge